# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION, *as Statutory Trustee of the Kachay Homes, Inc. Defined Benefit Pension Plan*<br><br>Plaintiff,<br><br>v.<br><br>ILANA KARP and SAMUEL KARP,<br><br>Defendants. | Case No.: 18cv652-MMA (AGS)<br><br>**ORDER DENYING DEFENDANTS' MOTIONS FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIM**<br><br>[Doc. Nos. 20, 21] |

Presently before the Court are Defendants Ilana Karp's ("Ilana") and Samuel Karp's ("Samuel") motions to amend their answers to add counterclaims. Doc. Nos. 20, 21. Plaintiff Pension Benefit Guaranty Corporation ("Plaintiff" or "PBGC") opposes the motions. Doc. No. 22. Defendants did not reply. *See* Docket. The Court finds the motions suitable for disposition without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons stated herein, the Court **DENIES** both of Defendants' motions.

## BACKGROUND

On March 30, 2018, Plaintiff, as statutory trustee of the Kachay Homes, Inc. Defined Benefit Pension Plan (the "Plan"), initiated this action on behalf of the Plan under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. §§ 1301-1461, by filing a Complaint. Doc. No. 1 ("Compl."). Plaintiff alleges that Defendants Ilana and Samuel breached their ERISA fiduciary duties, causing the Plan to suffer losses. Compl. ¶ 1. Specifically, Plaintiff alleges that Defendants "breached their ERISA fiduciary duties by causing the Plan to engage in transfers and loans that were not in the sole interest of participants and beneficiaries . . . and were prohibited transactions." *Id.* Additionally, Plaintiff alleges Defendants breached their fiduciary duties "by failing to seek payment for the Plan of the transfer and loans." *Id.*

On April 20, 2018, Defendants filed separate answers to the Complaint. Doc. Nos. 5, 6. On September 13, 2018, Magistrate Judge Major issued a Scheduling Order which, among other things, provided that any motion to join other parties, to amend the pleadings, or to file additional pleadings must be filed on or before October 23, 2018. Doc. No. 19. On October 23, 2018, Defendants each filed a motion for leave to file an amended answer to add counterclaims against Plaintiff for intentional infliction of emotional distress and negligent infliction of emotional distress. Doc. Nos. 20, 21.

They allege that the Plan covered Kachay Homes, Inc. and Kachay Co., Inc.[1] ("Kachay") and that Defendants were co-trustees of the Plan. Doc. Nos. 20-2 at 9, 21-2 at 9. Kachay paid an annual premium to Plaintiff, which provides insurance to pension plans in case of the pension's failing and being unable to pay the full amount of benefits due to the pension plan participants. Doc. Nos. 20-2 at 9, 21-2 at 9. Additionally, Kachay made annual contributions to the Plan. Doc. Nos. 20-2 at 9, 21-2 at 9.

During the 2007 recession the Kachay companies were holding "four large spec houses for sale to the public and had loans with several banks for financing of the projects." Doc. Nos. 20-1 at 9, 21-2 at 9. Due to the recession, banks "cut off funding for Kachay's projects," and its projects "went into foreclosure and were taken away." Doc. Nos. 20-1 at 9-10, 21-1 at 9-10. Kachay was "in financial trouble and . . . at risk of

---

[1] Kachay Co., Inc. has now been renamed Kachay Global Development, Inc. ("KGD"). Doc. Nos. 20-2 at 8-9, 21-2 at 8-9.

2

failure," which meant the Plan "would also fail to be funded sufficiently to provide for payment of benefits to the participants." Doc. Nos. 20-1 at 10, 21-1 at 10. "To protect the business and the pension, the Kachay Companies borrowed funds from the pension to fund their ongoing operations, with the intention to return the funds. However, due to their financial difficulties, the Kachay Companies were unable to repay some of these loans prior to the date of the Plan termination." Doc. Nos. 20-1 at 10, 21-1 at 10. Additionally, Ilana and Samuel contributed personal assets to Kachay "to keep the companies and pension solvent for as long as possible," and "mostly paid the loans that were taken by the company with their personal money." Doc. Nos. 20-1 at 10, 21-1 at 10. Despite their efforts, "Kachay was no longer able to make premium payments to [Plaintiff] or to fund the Plan contributions." Doc. Nos. 20-1 at 10, 21-1 at 10.

On August 15, 2013, Plaintiff and Kachay agreed to terminate the Plan under a "distress termination" as of February 4, 2013. Doc. Nos. 20-1 at 10, 21-1 at 10. Plaintiff "spent three years requesting information from Kachay. During this time, Kachay complied with numerous repetitive requests for information. [Ilana and Samuel] responded in detail to each such request, with a great deal of effort and time consumed. Kachay provided a voluminous amount of information to [Plaintiff]." Doc. Nos. 20-1 at 10, 21-1 at 10.

Ilana and Samuel, who are elderly, depend on their pension and social security proceeds. Doc. Nos. 20-1 at 11, 21-1 at 11. They allegedly "have had concern and distress over their treatment by [Plaintiff and] have worried that their benefits would be taken away, leaving them with insufficient funds to pay their living expenses." Doc. Nos. 20-1 at 11, 21-1 at 11. Ilana and Samuel allege that "[t]he delay in resolution of the issues regarding the [Plan] was extremely distressing," and that "[t]hey were concerned over the implications of not being able to meet the demands [and] worried about their potential liability based on groundless allegations." Doc. Nos. 20-1 at 11, 21-1 at 11. According to Defendants, they "suffered extreme concern over their fear that their pension benefits could be taken away." Doc. Nos. 20-1 at 11, 21-1 at 11.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course within 21 days of serving the pleading, or 21 days after the earlier of service of a responsive pleading or service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave," though the court "should freely give leave when justice so requires." *Id.* Courts consider five factors in assessing the propriety of an amendment: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) prejudice to the opposing party; and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* However, "[f]utility of amendment can, by itself, justify the denial of a motion or leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

## DISCUSSION

Plaintiff argues amendment would be futile but does not challenge any of the other *Foman* factors. Doc. No. 22 at 5-13. As an initial matter, the Court finds that the other factors are satisfied. First, Defendants filed their motion on the deadline to file motions to amend pleadings and when discovery had just begun. As a result, there is an insufficient showing of undue delay. Second, there is no indication of wrongful motive in Defendants bringing the counterclaims. Third, Defendants have not previously

amended their answers. As to the fourth factor, Plaintiff does not allege amendment would prejudice it.[2] The Court, therefore, turns to futility of amendment.

As indicated previously, futility alone can justify the denial of a motion to amend. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quotation marks and citation omitted). "'If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.[']" *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963) (quoting *Foman*, 371 U.S. at 182).

Plaintiff first argues that amendment would be futile because the United States, not Plaintiff, is the proper counter defendant for Defendants' counterclaim. Doc. No. 22 at 6. Federal courts lack jurisdiction over suits brought against the United States unless the United States consented to be sued. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). The Federal Torts Claims Act ("FTCA"), however, grants federal district courts exclusive jurisdiction over civil actions against the United States for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1). The FTCA "is the exclusive remedy for tortious conduct by the United States, and it only allows claims against the United States. Although such claims can arise from the acts or omissions of United States agencies . . . , an agency itself cannot be sued under the FTCA." *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998) (citing *Shelton v. United*

---

[2] Originally these motions were set for hearing on December 3, 2018, but due to settlement discussions which may fall through, the parties jointly requested the hearings be reset to May 20, 2019. *See* Doc. Nos. 23, 25, 27. In the parties' most recent request for a continuance, the parties sought only a different date for the hearing and not other dates in the scheduling order. *See* Doc. No. 27. As such, it appears that if the motions were granted the parties would either have sufficient time to complete discovery and prepare for pretrial motions or would separately request a continuance. *See* Doc. No. 26.

*States Customs Serv.*, 565 F.2d 1140, 1141 (9th Cir. 1977)). Here, the PBGC is a federal agency that administers the pension plan termination insurance program under Title IV of ERISA. *See* 29 U.S.C. §§ 1301-1461. Additionally, Defendants' proposed counterclaims assert the tort claims of negligent infliction of emotional distress and intentional infliction of emotional distress. *See* Doc. Nos. 20-2, 21-2. As a result, Defendants' proposed tort claims may not be asserted against Plaintiff. *See Craft*, 157 F.3d at 706-07 (indicating that the FTCA waives sovereign immunity against only the United States, and not United States agencies).

Even if the United States were the named counter defendant, Plaintiff argues amendment would be futile because Defendants have not exhausted their administrative remedies. Doc. No. 22 at 7. The FTCA "provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." *McNeil v. United States*, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)). While the FTCA does not require exhaustion for "such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim[,]" 28 U.S.C. § 2675(a), the Ninth Circuit has construed this exception to apply only where "the principal action by the United States was in tort and the counterclaim was compulsory in nature." *Spawr v. United States*, 796 F.2d 279, 281 (9th Cir. 1986). The Ninth Circuit applies the "logical relationship" test to determine whether a counterclaim is compulsory. *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (applying Arizona law, but noting that the Ninth Circuit uses the same standard). This test considers "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* (citation and internal quotation marks omitted).

Plaintiff's Complaint alleges that Defendants breached their ERISA fiduciary duties "by causing the Plan to engage in transfers and loans that were not in the sole interest of participants and beneficiaries" and "by failing to seek repayment for the Plan

of the transfers and loans[.]" Compl. ¶ 1. By contrast, Defendants' intentional infliction of emotional distress and negligent infliction of emotional distress counterclaims allege that Plaintiff acted outrageously by processing Defendants' pension and handling the distress termination for three years. Doc. No. 20-2 at 11; 21-2 at 11. Thus, Plaintiff's claims arise out of Defendants' conduct as trustees of the Plan and Defendants' counterclaims arise out of Plaintiff's conduct in terminating the Plan under a distress termination. While all the claims generally relate to the Plan, they relate to different time frames and a different set of facts. Further, it appears that none of the material facts of Plaintiff's claims would overlap with the material facts of Defendants' counterclaims. As such, the operative facts for these claims are not so logically connected that Defendants' counterclaims would be considered compulsory.

Thus, Defendants are not excused from the FTCA's administrative exhaustion requirement. Defendants do not allege that they presented their tort claims to the appropriate Federal agency. *See* Doc. Nos. 20-2 at 8-12, 21-2 at 8-12. "[T]he Supreme Court [has] clarified that a prematurely filed FTCA claim must be dismissed even if the [party] ultimately exhausts his administrative remedies before 'substantial progress' has occurred in the case." *D.L. v. Vassilev*, 858 F.3d 1242, 1245-46 (9th Cir. 2017) (citing *McNeil*, 508 U.S. at 110, 113). Accordingly, amendment would be futile because Defendants' have not alleged exhaustion of administrative remedies.

Even if the United States were the named counter defendant and Defendants had exhausted their administrative remedies, Plaintiff contends amendment would still be futile because Defendants' proposed counterclaims are barred by the discretionary function exception to the FTCA. Doc. No. 22 at 9-12. "The discretionary function exception precludes claims against the United States which are 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion was abused.'" *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (citing 28 U.S.C. § 2680(a)). The United States bears the burden of demonstrating the

challenged discretionary act involved "judgment . . . of the kind that the discretionary function exception was designed to shield, namely only governmental actions and decisions based on considerations of public policy." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (internal quotation marks and citation omitted). "Where the exception applies, the United States has not waived its sovereign immunity and [the court] lack[s] subject matter jurisdiction over the claims." *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016). "The Supreme Court has prescribed a two-part test for determining whether the discretionary function exception applies[:]" (1) the "discretionary act" prong; and (2) the "policy judgment" prong. *Id.* (citing *Berkovits v. United States*, 486 U.S. 531, 536-37 (1988)); *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996).

Under the "discretionary act" prong, the Court asks whether the challenged conduct "involve[d] an element of judgment or choice." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1173 (9th Cir. 2002). "In addition to duties prescribed by the common law torts 'of the place where the act or omission occurred,' federal employees must follow 'federal statute[s], regulation[s], or polic[ies that] specifically prescribe[] a course of action for an employee to follow.'" *Gonzalez*, 814 F.3d at 1027 (citations omitted). "In such cases, 'the employee has no rightful option but to adhere to the directive,' and the discretionary function does not apply." *Id.* (citation omitted). As a result, conduct is not discretionary where it violates a mandatory directive and is not a product of judgment or choice. *Berkovits*, 486 U.S. at 536. If the conduct involves an element of judgment, the first prong is met.

Defendants' allege that Plaintiff caused them acute emotional distress by making numerous and repetitive requests for information, delaying for three years to process Defendants' plan benefits and in handling the Plan's termination, and delaying in resolving the issues regarding the Plan. Doc. Nos. 20-2 at 10-11; 21-2 at 10-11. Title IV of ERISA provides Plaintiff with statutory authority to seek termination of a pension plan, become its trustee, and to determine and pay benefits to plan participants and

beneficiaries. 29 U.S.C. §§ 1342(d)(1)(A)(vi), 1342(d)(1)(B)(i). Generally, the trustee of a terminated plan is required to, among other things, require the plan sponsor, plan administrator, contributing or withdrawn employer, or employee organization representing plan participants to furnish any information reasonably needed to administer the plan, and gives the trustee the discretion to do any other acts necessary "to continue operations of the plan without increasing the potential liability of the PBGC, if such acts may be done under the provisions of the plan." 29 U.S.C. § 1342(d)(1)(A). "Aside from these mandatory provisions, the trustee is given a number of discretionary powers that allow it to administer the plan and manage its assets. Since the trustee's discretion with respect to these powers, which provide the bulk of its oversight authority, is not limited, and plan trustees are bound by fiduciary duty to the extent that they exercise discretionary authority with respect to the plan, the trustee's fiduciary duties inhere in its general oversight of the plan." *Pineiro v. Pension Benefit Guaranty Corp.*, 318 F. Supp. 2d 67, 81 (S.D.N.Y. 2003) (internal citation omitted). Moreover, "there is evidence that terminating a plan is an extended process. The trustee is given the power to pay benefits, and to receive payments for guaranteed benefits from PBGC, 29 U.S.C. § 1342(d)(1)(B)(i), (iii), without any indication that these duties might end, suggesting that the trustee's responsibilities continue as long as there are living participants and survivors entitled to monthly benefit payments." *Id.* at 82. Accordingly, the amount of information and length of time in administering the Plan and its termination were a matter of Plaintiff's judgment or choice. Thus, the "discretionary act" prong is met.

Pursuant to the "policy judgment" prong, the Court determines "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovits*, 486 U.S. at 536. The Court does not focus "on the agent's subjective intent in exercising the discretion conferred by statute or regulation," but instead "on the nature of the actions being taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). "The decision need not *actually* be grounded in policy considerations so long as it is, by its nature, susceptible to a policy

analysis." *GATX/Airlog Co.*, 286 F.3d at 1174 (internal quotation marks omitted). "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* As a result, because the statutes governing Plaintiff allow it to exercise discretion, it is presumed that Plaintiff's acts are grounded in policy when exercising that discretion. *See id.* Defendants have not argued otherwise. Accordingly, the Court finds that the discretionary function exception applies and that the Court lacks subject matter jurisdiction over Defendants' counterclaims. *See Gonzalez*, 814 F.3d at 1027.

## CONCLUSION

Based on the foregoing, the Court concludes that amendment of Defendants' answers would be futile. Therefore, the Court **DENIES** Defendants' motions for leave to amend. Doc. Nos. 20, 21.

**IT IS SO ORDERED**.

Dated: May 14, 2019

Hon. Michael M. Anello
United States District Judge